UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DONALD RAY WILBURN,**

      **Plaintiff,**

                                    **Civil Action 2:20-cv-644**
                                    **Judge Michael H. Watson**
      **v.**                               **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

### REPORT AND RECOMMENDATION

Plaintiff, Donald Ray Wilburn ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability, disability insurance benefits, and supplemental security income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's Response in Opposition (ECF No. 9), Plaintiff's Reply (ECF No. 10), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I.    BACKGROUND

On March 29, 2016, Plaintiff protectively filed his application for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). (R. at 212–13.) Plaintiff simultaneously filed his application for supplemental security income under Title XVI of the Act. (*Id.* at 219–22.) Both applications alleged disability beginning on

February 1, 2016. (*Id*. at 212, 219.) Plaintiff's applications were denied initially on August 16, 2016, and upon reconsideration on November 28, 2016. (*Id*. at 142, 146, 154, 161.) Plaintiff sought a hearing before an administrative law judge. (*Id*. at 166.) Administrative Law Judge Jeffery Hartranft ("ALJ") held a hearing on September 7, 2018, at which Plaintiff, represented by counsel, appeared and testified. (*Id*. at 36.) Vocational expert Charlotta J. Ewers (the "VE") also appeared and testified at the hearing. (*Id*.) On December 17, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id*. at 12–29.) On December 2, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id*. at 1–5.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In his Statement of Errors, Plaintiff asserts a single contention of error: that the ALJ failed to properly evaluate the opinion of Plaintiff's treating psychiatrist, Zana Dobroshi, M.D., Ph.D. (Pl.'s Statement of Errors, ECF No. 7.) The undersigned finds that Plaintiff's contention lacks merit.

## II. THE ADMINISTRATIVE DECISION

On December 17, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. at 12–29.) The ALJ first found that the Plaintiff meets the insured status requirements through June 30, 2020. (*Id*. at 17.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity

---

1. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

since February 1, 2016, the alleged onset date. (*Id.* at 18.) At step two, the ALJ found that Plaintiff has the following severe impairments: cervical and lumbar degenerative disc disease; inguinal hernia with surgical repair; seizure disorder; schizoaffective disorder, bipolar type; unspecified depressive disorder; and unspecified anxiety disorder. (*Id.*) At step three of the sequential process, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 19–21.) The ALJ set forth Plaintiff's Residual Functional Capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he could not climb ladders, ropes, and scaffolds, and would need to avoid workplace hazards such as unprotected heights and machinery, and could not perform commercial driving. He could work in positions that did not require strict production quotas or fast-paced work such as on an assembly line. He would be capable of occasional interaction with the general public, coworkers, and supervisors, with no tandem tasks, no customer service, conflict resolution, or persuasion responsibilities.

---

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

(*Id.* at 21.)

In assessing Plaintiff's RFC, the ALJ considered the evidence of record, including, *inter alia*, medical records documenting Plaintiff's diagnoses and treatment. (*Id.* at 21–27.) The ALJ also considered a number of medical opinions, and assigned "significant" weight to the opinions of the State agency psychological consultants, "partial" weight to the opinion of a psychological consultative examiner, and "little" weight to the opinion of Plaintiff's treating psychiatrist, Zana Dobroshi, M.D., Ph.D. (*Id.* at 26–27.)

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work. (*Id.* at 27.) At step five, relying on the VE's testimony, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy. (*Id.* at 28.) The ALJ therefore found that Plaintiff was not disabled under the Act. (*Id.* at 29.)

## III. RELEVANT EVIDENCE OF RECORD

As an initial matter, the undersigned will limit discussion of the evidence to those portions bearing directly on Plaintiff's contention of error.

### A. Medical Treatment Records

The record includes documentation of Plaintiff's mental health treatment as far back as April 2016. (R. at 325.) In total, that documentation reflects that Plaintiff suffers from a variety of mental conditions including schizoaffective disorder, bipolar type; unspecified depressive disorder; and unspecified anxiety disorder. (*Id.* at 417, 512.)

#### 1. Woodland Center

At a May 12, 2016 office visit, Plaintiff reported depressed mood and anxiety with symptoms, including, *inter alia*, feelings of isolation, fatigue, hopelessness, shakiness, sweatiness, and panic. (*Id.* at 381.) Plaintiff also reported auditory and visual hallucinations.

(*Id*. at 384.) Plaintiff's recommended treatment consisted of counseling and medication. (*Id*.) At a December 5, 2016 visit, Plaintiff reported that medication had helped his symptoms. (*Id*. at 494.)

### 2. King's Daughters Health System

Throughout Plaintiff's care with King's Daughters Medical Center from April 2016 through September 2016, it was observed that Plaintiff presented with normal mood, affect, and behavior, and that his judgment and content were also normal. (*Id*. at 424, 430, 435, 441, 449.) On April 28, 2016, Plaintiff's demonstrated no distress or signs of anxiety. (*Id*. at 424.) During this time, Plaintiff was taking prescribed anti-depressants. (*Id*. at 422–23.)

On September 9, 2016, Plaintiff complained of depression and reported that he had not been previously treated for depression. (*Id*. at 485.) Plaintiff related that his method of coping consisted of isolating himself. (*Id*.) Plaintiff was diagnosed with depression. (*Id*.) Treatment records from November 11, 2016, reflect that Plaintiff was treated for increased schizophrenia symptoms after endorsing hallucinations, anxiety, confusion, and sleep disturbances. (*Id*. at 479.)

### 3. Holzer Health System

Plaintiff presented at the Holzer Jackson emergency department on April 1, 2017, following a seizure episode. (*Id*. at 508.) Treatment records reflect that Plaintiff exhibited a normal mood and affect. (*Id*. at 509.) The emergency department referred Plaintiff for a neurology consult, which occurred on April 25, 2017. Treatment records from that visit reflect that Plaintiff reported no anxiety, depression, or insomnia, and indicate compliance with prescribed psychological medications. (*Id*. at 513.) Plaintiff presented at the emergency department for seizures again on October 26, 2017. (*Id*. at 588.) Treatment records reflect that

5

Plaintiff once again exhibited normal mood and affect. (*Id*. at 594.)

On October 30, 2017, Plaintiff presented at the emergency room with complaints of exacerbated schizophrenia symptoms, including sleep disturbance and hallucinations. (*Id*. at 559, 579–80.) Plaintiff reported being "off his medications" prior to admission. (*Id*. at 559.) Upon resuming medication, the records show that Plaintiff was much improved, reached baseline, and reported no major complaints. (*Id*.) Plaintiff was recommended for discharge on November 1, 2017, with a discharge condition of "stable." (*Id*. at 559, 615.)

On January 18, 2018, the office treatment records from Holzer Gallipolis reflect that Plaintiff denied anxiety and depression, endorsed having the ability to care for himself, and reported the ability to perform all the activities of daily living. (*Id*. at 616.) The provider's "mini mental state exam" found Plaintiff alert and oriented, with remote memory intact and appropriate knowledge and attention span. (*Id*. at 618.) On March 13, 2018, Plaintiff again denied depression and anxiety. (*Id*. at 683.) The provider recorded that Plaintiff exhibited normal affect and was alert and oriented. (*Id*. at 684.) At an April 10, 2018 visit, Plaintiff reported symptoms of depression and anxiety. (*Id*. at 686.) The provider's physical examination findings, however, reflect that Plaintiff presented with a normal mood and was alert and oriented. (*Id*. at 687.) Further, Plaintiff's PHQ-2 screening for depression rendered negative results. (*Id*.)

### 4. Adena Bone and Joint Center

Adena Bone and Joint office treatment records from January 13, 2017, noted that Plaintiff was then-compliant with a prescription treatment regimen. (*Id*. at 538.) The same records also reflect that Plaintiff denied any symptoms of depressed mood. (*Id*. at 539.)

### 5. Hopewell Health Centers

Plaintiff's Hopewell Health Centers treatment records from November 11, 2017, include, in relevant part, as follows: "Client reports last week has been difficu[l]t. Hallucinations have increased. Cl[ie]nt reports taking medication as pres[cr]ibed. Client reports he had misplac[ed] and missed taking some of his med[ic]ation. Cl[ie]nt reports feeling fatigued and [rest]lessness at the same time. Client reports he is not sleeping well." (*Id*. at 660–61.)

### 6. Zana Dobroshi, M.D., Ph.D.

Dr. Dobroshi began treating Plaintiff in April 2018. (*Id*. at 692.) Dr. Dobroshi met with Plaintiff once a month for 30–45 minutes. (*Id*.) In Dr. Dobroshi's July 12, 2018 office treatment records, he assessed Plaintiff as suffering from, *inter alia*, "Schizoaffective Disorder, Bipolar type, presently depressed and with psychotic features, not suicidal or homicidal." (*Id*. at 690.) Dr. Dobroshi's mental status exam at that visit is documented as follows:

> Casually groomed 35 year old male, appears stated age. He has no abnormal motoric movements. His speech is clear and coherent, mood is "much better", affect is full range and reactive. Thinking is logical, does not endorse delusions, has no suicidal or homicidal thoughts. He is future oriented, enjoys his son very much. [Patient] is alert and fully oriented, his short term memory and focus are weak, his level of knowledge does not appear to be in the level of high school graduate. However, this appears to be more due to educational neglect. Patient has fair insight and fair judgment at this time.

(*Id*.) This treatment note also indicates that Plaintiff reported the ability to live with others, keep himself busy doing chores, help his son with homework, and collect and sell mushrooms. (*Id*. at 690.)

### B. Medical Opinions

#### 1. Jinhui Wang, Psy.D. – Consultative Examination

Dr. Jinhui Wang was engaged by the Ohio Division of Disability Determinations to conduct a one-time, in-person psychological evaluation of Plaintiff. (*Id*. at 414.) That

7

evaluation took place on July 25, 2016. (*Id*.) Plaintiff reported that his chief complaints were "severe depression, anxiety, I can't be around a lot of people at a time." (*Id*.) Plaintiff also reported that he had been hearing voices. (*Id*. at 416.) Dr. Wang observed that Plaintiff appeared sad during the evaluation. (*Id*.) Nonetheless, Plaintiff was cooperative and demonstrated average social skills, exhibited affect congruent with verbal content, and showed no evidence of labile affect, eccentric behaviors, impulsivity, or compulsivity. (*Id*.) Dr. Wang further reported that Plaintiff's thought content was normal and that there was no evidence of delusional belief, behavioral manifestation of hallucination, or flight of ideas. (*Id*. at 416–17.) Plaintiff presented no loose association, no indication of inability to self-identify or self-report mental difficulties, and no indication of excessive vulnerability to exploitation. (*Id*.) The evaluation also noted that Plaintiff's concentration and persistence appeared satisfactory and that he was able to remain on task and work at an adequate pace throughout the evaluation. (*Id*. at 417.) In a section titled "Reliability Estimate," Dr. Wang stated that Plaintiff "reported unusual symptoms." (*Id*.) Regarding activities of daily living, Plaintiff reported to Dr. Wang that he maintained the capacity to live with others, namely his mother and brothers, to conduct self-care, to go grocery shopping on occasion, and to get himself medical care when needed. (*Id*. at 416.)

**2. Zana Dobroshi, M.D., Ph.D. – Treating Psychiatrist**

On July 25, 2018, Dr. Dobroshi submitted a letter containing his opinion on Plaintiff's level of impairment and ability to work. (*Id*. at 692.) In that opinion, Dr. Dobroshi indicated that he had diagnosed Plaintiff as having schizoaffective disorder bipolar type, obsessive-compulsive disorder ("OCD"), epilepsy, and restless leg syndrome. (*Id*.) Dr. Dobroshi reported that Plaintiff's response to treatment was good, but that his OCD was untreatable. (*Id*.) Dr. Dobroshi further found that failure to treat Plaintiff's conditions resulted in exacerbated

symptoms, but that Plaintiff was recently becoming more compliant with treatment, due in part to assistance from his mother. (*Id.* at 693.) Dr. Dobroshi concluded that Plaintiff's impairments were lifelong, with some waxing and waning qualities, that they "prevent him from working [on a] daily basis," and that, "at best, [Plaintiff] would be absent from work more than four days per month." (*Id.*)

### 3. Other Relevant Records

In a 2018 Function Report Plaintiff completed, he endorsed the ability to conduct self-care and hygiene, to care for pets, to care for his child, to help his child with homework, to spend time with others, to shop in stores occasionally, and to participate in hobbies. (*Id.* at 283–87.) Plaintiff further reported that he got along fine with authority figures and that his best friend was a police officer. (*Id.* at 289.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court

must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–88 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.     ANALYSIS

Plaintiff now argues that the ALJ committed reversible error by improperly discounting Dr. Dobroshi's treating source opinion. (Pl.'s Statement of Errors, ECF No. 7; Pl.'s Reply, ECF No. 10.) An ALJ must consider all medical opinions that he receives in evaluating a claimant's case. 20 C.F.R. §§ 404.1527(c), 416.927(c). When a treating physician's opinion is submitted, the ALJ generally gives deference to it "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Blakley*, 581 F.3d at 406 (internal quotations omitted). If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic

10

techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."   20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

If the ALJ does not assign controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements when determining the opinion's weight.   *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).   Specifically, if an ALJ does not give a treating physician's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id*.   Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [a claimant's] treating source's opinion."   20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).   Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."   *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted).   The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied."   *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).   The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.   *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.   Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled."   *Germany-Johnson v.*

11

*Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's RFC and a determination on whether a claimant meets the statutory definition of "disabled." 20 C.F.R. §§ 404.1527(d), 416.927(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of [a claimant's] impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. §§ 404.1527(d), 416.927(d); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492–93 (6th Cir. 2010).

As noted above, the ALJ assigned "little weight" to Dr. Dobroshi's July 25, 2018 opinion. (R. at 26–27.) The ALJ summarized Dr. Dobroshi's opinion, and explained his reasons for discounting that opinion, as follows:

> The medical source statement submitted by treating psychiatrist Dr. Dobroshi has also been considered. According to Dr. Dobroshi, the claimant experienced lifelong, waxing and waning impairments, but that he had just recently started to be more compliant with the help of his mother and that his response to treatment was good. However, Dr. Dobroshi opined that the claimant's prognosis was very guarded and that his impairments prevented him from working on a daily basis and that, at best, he would be absent from work more than four days per month. Treating source opinions are to be given controlling weight if well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence. However, Dr. Dobroshi's opinion is not fully supported by, and is inconsistent with, the objective medical evidence and with the claimant's activities of daily living I find persuasive, as will be discussed more fully below. The totality of the medical evidence clearly supports that the claimant is not as limited as assessed by this doctor. Dr. Dobroshi's opinion appears to be highly dependent

> upon the claimant's subjective reports of symptoms and limitations during his short, three month treating relationship with the claimant, including periods when the claimant['s] symptoms were occurring when [he] was not entirely compliant with treatment recommendations. However, I find the claimant not wholly reliable as a reporter of symptoms and limitations, as set forth more fully below. Moreover, Dr. Dobroshi did not have access to all of the medical evidence that is currently in the record that contradicts his conclusions, discussed more fully above. Given the foregoing, Dr. Dobroshi's opinion is not an accurate representation of the claimant's mental functional capacity status. For these reasons, I assign very little weight to Dr. Dobroshi's opinion.

(*Id.*) (internal citations omitted).

The undersigned finds no error with the ALJ's consideration and assessment of Dr. Dobroshi's opinion. The ALJ properly declined to afford Dr. Dobroshi's opinion controlling weight and articulated his reasons for doing so. In support, the ALJ reasoned that the extent of Plaintiff's limitations opined by Dr. Dobroshi was inconsistent with, and unsupported by, the objective medical record and evidence of Plaintiff's activities of daily living. *See* 20 C.F.R. §§ 404.1527(c)(2)–(4), 416.927(c)(2)–(4); (R at 26–27.) Not only are these good and sufficient reasons for assigning a treating source opinion less than controlling weight, but, when present, they mandate such a determination. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (providing that a treating source opinion will be given controlling weight if and only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record").

The ALJ's written decision highlights evidence inconsistent with Dr. Dobroshi's extreme opinion regarding Plaintiff's ability to work on a regular basis. For example, that Plaintiff's symptoms have varied in severity, that past treatments have generally proven effective, and that Plaintiff's experience of more severe symptoms regularly coincides with a failure to comply with recommended treatment. (*Id* at 20–21, 24–27.) The ALJ further recognized that Dr. Dobroshi's opinion on the extent of Plaintiff's functional limitations was inconsistent with the

13

evidence of Plaintiff's ability to perform daily activities, such as: caring for himself, a pet, and his child; living with others; doing chores; relating to authority figures; and accessing medical care. (*Id*. at 20–21, 24–26.) These obvious inconsistencies provide substantial evidence in support of the ALJ's decision to discount Dr. Dobroshi's opinion. *See* S.S.R. 96-2p, 1996 WL 374188 at *3.

Additionally, the ALJ discussed that the severity of Dr. Dobroshi's opined limitations were not supported by objective medical evidence and evidence of Plaintiff's engagement in activities of daily living. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Dr. Dobroshi opined that Plaintiff suffered from life-long impairments, which "prevent him from working [on a] daily basis." (R. at 693.) However, the record reflects that Plaintiff had substantial symptom improvement when compliant with prescribed treatment. Further, Dr. Dobroshi himself noted that Plaintiff's compliance was trending upwards with the help of his mother. (*Id*. at 693.)

Finally, the ALJ found, based in part on the brief treatment relationship at the time the opinion was authored, that Dr. Dobroshi's opinion was likely founded primarily on Plaintiff's subjective reports of his symptoms. In other words, it neither provided the "longitudinal picture" that serves, in part, to justify the presumption of controlling weight to treating source opinions (20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i)), nor carried the support of objective medical evidence included in the record. The ALJ was permitted to consider the length of treatment relationship and frequency of examination when assigning weight to Dr. Dobroshi's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i); *Wilson*, 378 F.3d at 544. Based on those factors, and in light of the ALJ's reading of the record as a whole, the ALJ reasonably concluded that Dr. Dobroshi's opinion was based more on Plaintiff's subjective self-reports than on the objective medical record.

14

Because substantial evidence supports the ALJ's determination that Dr. Dobroshi's opinion was inconsistent with and unsupported by the record, the undersigned concludes that the ALJ did not violate the treating physician rule or otherwise err in the consideration and weighing of Dr. Dobroshi's opinion.

Plaintiff makes several arguments in favor of a contrary result. In general, Plaintiff argues that the ALJ's conclusions regrading Dr. Dobroshi's opinion were "conclusory or inconsistent with the record" and lacked satisfactory explanation. (Pl.'s Statement of Errors at 9, 12, ECF No. 7; Pl.'s Reply, ECF No. 10.) Plaintiff further questions the ALJ's assignment of greater weight to non-treating source opinions. (Pl.'s Statement of Errors at 10, ECF No. 7; Pl.'s Reply, ECF No. 10.) Finally, Plaintiff insists that the record contains evidence in support of Dr. Dobroshi's opinion. (Pl.'s Statement of Errors at 11, ECF No. 7; Pl.'s Reply, ECF No. 10.) The undersigned will address each argument, in turn.

Plaintiff first argues that the ALJ's conclusion lacks explanation and takes issue with the ALJ's claims to "explain his reasoning below." (Pl.'s Statement of Errors at 9–10, ECF No. 7; Pl.'s Reply, ECF No. 10.) Plaintiff argues the ALJ provided no such explanation and that, therefore, his conclusion violates the good reason rule. (Pl.'s Statement of Errors at 9–10 ECF No. 7; Pl.'s Reply, ECF No. 10.) Plaintiff, however, failed to read the conclusion in reference to the rest of the written decision. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (recognizing that the ALJ's decision should be read as a whole). Earlier in the decision, the ALJ provided an extensive summary of the evidence bearing on Plaintiff's mental capacity. (R. at 24–25.) The undersigned is not persuaded that the ALJ's errant reference to a discussion "below," rather than "above," renders his analysis "conclusory"—particularly when reading the ALJ's decision as a whole.

15

Plaintiff further argues that the ALJ improperly assigned greater weight to non-treating source opinions than to Dr. Dobroshi's treating source opinion. (Pl.'s Statement of Errors at 10, ECF No. 7; Pl.'s Reply, ECF No. 10.) The undersigned disagrees. The ALJ's cited reasons for assigning greater weight to the State agency psychological consultants' opinions mirror his reasons for assigning little weight to Dr. Dobroshi's. Specifically, the ALJ pointed out that the State agency consultants had access to Plaintiff's full medical record, and that their opinions were generally consistent with and supported by the record. *See* C.F.R. §§ 404.1527(c)(4), (6), 416.927(c)(4), (6); (R. at 26–27.) The ALJ further noted "that the evidence received into the record after these opinions did not provide any credible objectively supported new and material information that would alter these findings." (*Id.* at 26.) Thus, the ALJ reasonably and permissibly assigned greater weight to the State agency psychological consultants' opinions than to Dr. Dobroshi's. *See McCoy v. Comm'r of Soc. Sec.*, 356 F. Supp. 3d 704, 710 (S.D. Ohio 2018) (noting that "the ALJ may give great weight to the state agency opinion so long as it is 'supported by the evidence in the case record,'" even when lesser weight is given to a treating source opinion) (citing *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011)).

Finally, Plaintiff argues that the medical record in fact supports the limitations opined by Dr. Dobroshi. (Pl.'s Statement of Errors at 11, ECF No. 7; Pl.'s Reply, ECF No. 10.) In support, Plaintiff cites, *inter alia*, treatment notes reflecting breakthrough symptoms, including reports of depressed mood and hallucinations (R. at 369–70, 522); and diagnoses of schizoaffective disorder, depressive type, and OCD (*Id.* at 463–64, 690). This argument proposes "the classic situation in which the record evidence could support two different conclusions. In such scenarios, the law obligates the court to affirm the ALJ's decision,

because the ALJ is permitted to decide which factual picture is most probably true." *Waddell v. Comm'r of Soc. Sec.*, 2018 WL 2422035 at *10 (N.D. Ohio May 10, 2018), report and recommendation adopted, 2018 WL 2416232 (May 29, 2018); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). The mere existence of evidence in Plaintiff's favor is insufficient to overturn the ALJ's decision. As discussed above, substantial evidence supports the ALJ's decision to discount Dr. Dobroshi's opinion.

## VI. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or

modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE